### State of Vermont v. James Kelly

[306 A.2d 89]

No. 16-72

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed June 5, 1973

*Paul F. Hudson,* State's Attorney, for the State.

*Frederick M. Niland, Esq.,* White River Junction, for Defendant.

*James Kelly, pro se.*

**Smith, J.** On December 29, 1971, defendant was found guilty by jury verdict, after trial, upon an information which alleged that defendant assaulted and struck one James H. Olmstead. Trial was held in Vermont District Court, Unit No. 6, Windsor Circuit. The defendant has brought his appeal here from the verdict of guilty and the entry of judgment.

Defendant, James Kelly, was an inmate at the Vermont State Prison on February 21, 1971. On this date, James Olmstead, a custodial officer at the Vermont State Prison, was supervisor on the second tier of a cell block in the prison. The floor of this tier is some twenty feet below the third tier of the cell block. At about 2:50 P.M. a bucket of water was dropped from the third tier, which hit the leg of Mr. Olmstead below.

Another custodial officer, a Mr. Bashaw, testified that he saw the defendant on the third tier extend his hands over the railing of the third tier and heard a warning to Mr. Olmstead called out, and heard a crash. After the incident in question, Mr. Olmstead, Mr. Bashaw and a third custodial officer, Mr. LaCourse, found the defendant in a cell on the third tier, where he was not authorized to be.

Briefs have been filed for the defendant both by his counsel as well as *pro se*. The first question presented is whether the lower court erred in refusing to dismiss juror Margaret Peters for cause, as requested by the defendant.

Mrs. Peters, on the *voir dire*, disclosed that she was the mother of a secretary in the office of the States Attorney, and that she was the aunt of one of the guards at the State Prison. She testified that such relationships would have no influence upon her in deciding the case before her in a fair and impartial manner, and was cautioned by the lower court not to discuss the case in any way with her daughter. Upon the refusal of the court to dismiss Mrs. Peters for cause, the defendant was compelled to use a peremptory challenge to remove her from the jury.

Had the defendant not used all of his peremptory challenges before the jury was drawn, the question would not present a problem, for Mrs. Peters did not serve on the jury. *Lattrell* v. *Swain & Swain,* 127 Vt. 33, 36, 239 A.2d 195 (1968). But such peremptory challenges were exhausted by the defendant before the drawing on the jury was completed.

"Defendant has the burden of showing that he has been prejudiced by a ruling of the trial court. Error works a reversal only when the record satisfies the court that the rights of the excepting party have been injuri-

ously affected." *Lattrell* v. *Swain & Swain, supra,* 127 Vt. at 36.

We think that the trial court would have been better advised if it had excused Mrs. Peters from service on the jury upon the challenge for cause. It is true that the prospective juror stated that she could judge the case before her in a fair and impartial manner, and we have no doubt that she was sincere in such statement. But, human nature being what it is, the trial court could have well presumed that she might be unconsciously influenced by her relationships with those involved in law enforcement agencies.

However, with no showing by the defendant that his exhaustion of his peremptory challenges had resulted in his being tried by a jury which might have been prejudiced against him, and with his statement that he was "content" with the jury which tried him, we would be reluctant to reverse and remand for a new trial if this were the only claim of error raised by the defendant.

Defendant has briefed some four other claims of error by the lower court in the brief of counsel, but we will turn immediately to the question raised by the defendant as to the rebuttal argument of the State's Attorney concerning the failure of the State to call an unknown witness for the reason that calling such witness "could be as grave as the life or death of the man testifying."

The witness Bashaw, in answer to the question propounded to him by the State, "Did you observe what he [meaning the defendant] was doing?", responded with the unresponsive answer, "The information was that he supposedly was to have a water bucket and drop it on the officer." The defendant did not object to the answer, but did move for a mistrial, or that the court order the State to produce the witness that supposedly furnished such information. Both requests were refused.

In rebuttal argument, the State's Attorney, in response to the argument on the part of counsel for the defense regarding the "phantom" witness who presumably furnished Mr. Bashaw with the information relative to a possible assault by the defendant, and the failure of the State to produce such witness, made the following statement:

> "As to Mr. Niland's reference to this information that was received by Officer Bashaw there are reasons for not producing a witness and occasionally these reasons can be as grave as the life or death of the man testifying."

The defendant made an immediate objection on the ground that such argument was inflammatory. The court allowed the argument to stand, but requested the State to proceed no further on this line of argument.

■ In *State* v. *Parker*, 104 Vt. 494, 500–03, 162 A. 696 (1932), this Court condemned, in strong language, the resort to jury arguments inflammatory in content, departing from the evidence presented at the trial, or representing an injection into the case of the prosecutor's personal belief as to the guilt of the accused. We now, in no sense, retreat from that condemnation.

■ The argument here presented by the State was not based upon any evidence produced at the trial. It injected into the case, and into the minds of the jury, a sinister implication that if the State produced the witness, known to the State but unknown to the defendant, such witness might suffer death as a result of his testimony, presumably at the hands of the defendant. That such argument was highly prejudicial to the defendant cannot be doubted.

> "Every respondent, no matter how clear the evidence may make his guilt, is entitled to a fair trial and to receive a verdict after an argument based only upon that evidence, without an inflammatory appeal or the reference to matters outside the record." *State* v. *Parker*, *supra*, 127 Vt. at 503.

Compare *State* v. *Jackson*, 127 Vt. 237, 238, 246 A.2d 829 (1968).

The action of the trial court in allowing this argument to go unrebuked and not withdrawing it from the consideration of the jury was clearly prejudicial error, and requires a reversal of the verdict and judgment. For this reason, we need not consider the other claimed errors briefed here by the defendant, which it is doubtful will arise in a new trial.

■ ■ The *pro se* brief, filed by the defendant, asserts that there was no jurisdiction in the Vermont District Court to try him on the breach of peace charge. The defendant argues that 28 V.S.A. § 209 gives the warden of the State Prison sole jurisdiction of the offense with which he was charged. This section of the statute gives the warden or superintendent of a state correctional facility the discretionary power to place in solitary confinement an inmate who assaults a correctional officer, or attempts to break out of the correctional institution. It merely grants the warden or superintendant of a state correctional institution certain internal disciplinary powers to be used in his discretion, and in no way constitutes a bar to his subsequent prosecution under the criminal statutes. *State* v. *Lebo,* 129 Vt. 449, 450–51, 282 A.2d 802 (1971). In his *pro se* brief, the defendant also complains that his constitutional rights were violated by reason of the fact that the jury was informed of his status as a convicted prisoner.

The answer to this claim is that the defendant took the stand in his own behalf and fully identified himself as being an inmate in the Vermont State Prison.

The entry is: *Reversed and remanded for a new trial.*